By the Court.—Sedgwick, J.
The plaintiff on the trial and here, placed himself (as to the contract), upon the effect of written papers in evidence, and disclaimed the existence of any verbal contract.
The republic of Mexico had granted to certain parties-a right to build a railroad, &c., across the isthmus of Tehuantepec. Afterwards the republican government was attacked by military forces under Maximilian *284 and dislodged by him from the capítol of the country. Maximilian formed what was called an imperial government and held a great part of Mexico.
The defendant wished to carry out the project of building the railroad, and made certain arrangements with the parties holding the grant, to the end that he might become the owner of it for the purpose of transferring it to an incorporation to be formed. A decision of this appeal does not call for an exact statement of these matters. The defendant at this point, wished that Maximilian should in some way confirm the franchises of the original grantees, in their transferees.
On the trial, the defendant claimed, that the purpose was to form an incorporated company to whom the grant should be assigned, and that it was agreed between himself and other persons, of whom Mr. Wikoff was one, that if the latter should procure what was desired from Maximilian, then the defendant would deliver to them $300,000 of the stock of the proposed company, and that the 50,000 of this stock which in a certain event was to be delivered to the plaintiff, was parcel of this 300,000 shares.
In the early part of April, 1866, Mr. Wikoff wrote a form of a letter to be signed by plaintiff. The plaintiff copied it, and signed the copy, and handed this copy to Mr. Wikoff, himself keeping the draft. There was no date to it. The contents were as follows :
“ My dear Mr. Wikoff:
“ Will you please say to Mr. Roberts, that I accept the offer made by you of an amount of New York and Tehuantepec stock that will produce fifty thousand dollars, for which consideration I agree to go to Mexico and co-operate with you in obtaining the imperial sanction to the proposed company.
“ Furthermore, I desire that Mr. Roberts will associate me with you as his representative in accomplishing the proposed object.
*285 “ Finally, please arrange with Mr. Roberts, in accordance with all usages, that a liberal sum be appropriated for our joint expenses to and from Mexico.”
The plaintiff testified that on the morning of April 10,1866, as he was about to sail for Mexico, Mr. Wikoff or the defendant handed to him a letter as follows :
“Hew York, April 10, 1866.
“My Dear Sir:
“ I approve of the proposition made to you, by Mr. Wikoff, guaranteeing, to you fifty thousand dollars in stock of the projected Hew York and Tehuantepec Railroad and Steamship Company, in consideration of your assisting him to obtain the sanction of the imperial government of Mexico to said organization.
“I am very happy to associate you with Mr. Wikoff in the business he has undertaken, and hope that your joint efforts will be successful, both for my sake and that of his Mexican majesty.
“ I concur when the matter is complete.
“Marshall 0. Roberts.”
The original of this had been lost, but the plaintiff testified that all but the last sentence was in the writing of Mr. Wikoff, and that sentence was in the writing of the defendant. The defendant denied that he had signed this letter.
As to these two papers, the court charged that if there were no evidence of some modification at a later time, they formed, in themselves, a complete contract between the parties, that they were substantially the same in effect, and that even if the jury should find that the defendant had not signed the second, still he had (as a conclusion from evidence in the case), acknowledged Wikoff to be his agent, to make a contract of the kind set forth in the first, so that the first paper was evidence of a contract, all of whose terms were therein expressed.
*286 The testimony did not show that the defendant had ever seen the first paper, and I am of opinion that the learned judge went too far in charging that, as matter of law, the admissions of defendant conclusively showed that Wikoff was defendant’s agent to make a contract for him of the kind set forth in that first paper. These admissions are in the answer and in letters written by defendant. Whatever detached sentences there may be, that by themselves might justify an inference that Wikoff was acting for Roberts in making the arrangement with plaintiff, still all I think should be considered with the position that, from the first to the last the defendant takes and persistently reiterates that it was Wikoff as a principal who made the arrangement, in order to successfully accomplish what Wikoff and others had undertaken with defendant.
It is' entirely consistent with this that the defendant had promised, by a separate obligation, to deliver the stock as stated in the answer. Be that so, it does not necessarily prove that Wikoff in the first acted as Roberts’ agent. It rather intimates the contrary.
And if the defendant did sign the second paper, I do not think that would conclusively show that Wikoff acted as defendant’s agent in making the arrangement referred to, in the first paper. On that point, proper consideration should be given to the peculiar phrases of the last sentence, as throwing light upon the intention of defendant to indicate that he did not mean to hold himself out as a principal actor in all that was referred to in the part written by Wikoff, although at the same, he would be bound to the special obligations that flowed from his concurrence. It would not be right to attempt to construe this letter, for counsel have not yet reached the point of examining what plaintiff’s rights are, if they rest upon that letter.
It might be important to see if the compensation *287 intended by $50,000 in stock of the projected “ company” is the same as intended by “an amount of stock that will produce $50,000,” but a decision of this appeal does not involve this question, and counsel have not argued it, except incidentally. For a like reason, no attention will be given to the measure of damages, if the defendant were bound to deliver to plaintiff $50,000 in stock of the company.
It can hardly be doubted that the two letters describe the same object to be accomplished by the plaintiff and Wikoff. The one is “in obtaining the imperial sanction to the proposed company.” The other is “to obtain the sanction of the imperial government of Mexico to the said organization.” The plaintiff was bound to prove that he had secured that, before he could claim compensation. The court impliedly held the law to be, that by a proper construction the plaintiff performed this service, when he procured, as he proved, from Maximilian “permission to the Louisiana Tehuantepec Company .... that it may transfer the residence of its directorship from Hew Orleans to Hew York, and change its name to that of Hew York and Tehuantepec Railroad and Steamship Company. ” I use the words ‘ ‘ impliedly held this to be the law,” to avoid the statement of several parts of the charge to which specific exceptions were taken. The defendant claimed that the service described included, in addition to change of name, &c., the obtaining of the consent of the emperor to an assignment by the first grantees of its franchises to the proposed company. I am of opinion that the phrase “ obtaining the sanction of the imperial government,” may include all these things. Certainly if any one were obtained, there would thereby be a sanction of some kind. Proof, extrinsic of the letters, could probably be given to show to what the parties intended this sanction to apply, in order to determine what sanction was agreed to be pro *288 cured. The learned counsel for plaintiff claims, that a consent to an assignment is implied in the consent given by the emperor, and that the emperor must be held to have assented to all the purposes which he knew were meant by the parties to accompany the change of name and of residence. The implication is not direct, but is inferred, and rests upon a construction that would be given by the political body who made the concession, not subject to the jurisdiction of courts. The parties must have intended that the sanction was to be express and not only implied.
The court further held that the testimony to support this claim of defendant was such as related to a power of attorney, as to which some facts should be stated, further holding at the same time, that but for this power, the plaintiff was only bound to procure the sanction as stated in the letter, viz., to a change of name and residence.
When the plaintiff started for Mexico first, he was accompanied by Mr. Wikoff, who took a power of attorney made by the defendant to him. The steamship was wrecked upon the coast, and both plaintiff and Mr. Wikoff came back to this city, and saw the defendant. The only thing done then, that refers to the question here, was that Mr. Wikoff, with the consent of the parties, withdrew from the proposed journey to Mexico, and the plaintiff was to proceed alone. The plaintiff began his second voyage to Mexico on April 25, 1866. On May 9, a power of attorney, the same in its words as that given to Mr. Wikoff, excepting that the plaintiff’s name was inserted in Mr. Wikoff’s stead, was executed by defendant. The plaintiff received this in Mexico in May, June, or July, and he thinks in June.
This power recited that whereas the defendant desires “the permission and sanction of the imperial government of Mexico to change the name of said company and to call it the New York, Tehuantepec and Pacific *289 Railroad and Steamship Company, and to carry out the purpose above mentioned with the imperial government of Mexico, the said Marshall 0. Roberts has appointed and by these presents does appoint J. P. O’ Sullivan his attorney, in the name and stead of the said Roberts to negotiate with said imperial government of Mexico to change the name of the said company as above mentioned, and to transfer the rights and powers, property, franchises, charters of every name and nature of the said Louisiana and Tehuantepec Company with the New York, Tehuantepec and Pacific Railroad and Steamship Company.”
I think there can be no doubt that such a power of attorney is not conclusive evidence in its terms of what services the person named as attorney was to do, to entitle him to compensation. Its declarations are in the nature of admissions as to facts, but it is not a contract, and proof of a cotemporaneous contract may explain or contradict the admissions. The attorney may not be entitled to compensation if he does only what is recited as the motive of the principal to make the power, if he has elsewhere contracted to do something more. In the present case, the recital is not conclusive evidence that the meaning of the parties in the phrase “imperial sanction to the proposed company,” in the two letters (even if they contained the contract), wa? that there should be imperial permission to change the name of the company, and to do nothing more. Nor do I perceive that the purpose of the party is manifested more decisively by the statement of Ms wish in a recital, than it is by the statement of what the attorney is authorized to do. This shows a desire that the attorney should do the authorized things in a proper case.
Nor was it a necessary conclusion of fact in the case, that the plaintiff had never made Ms compensation depend among other things, upon procuring a sanction to *290 the assignment to the proposed company before the power reached him in Mexico, if he did so at that time, because the plaintiff in his letter of May 18, 1867, to defendant writes: “I was called upon by Mr. Wikoff acting for you, and solicited to go to Mexico to undertake to procure by the imperial government the necessary ratification (and permission to change the name of the Louisiana and Tehuantepec Company) of the sale of said company’s rights, titles, interests, etc., to yourself, as is already distinctly set forth in your power of attorney to me.” This was such an admission as gave the defendant a right to go to the jury for their verdict, as to what was the original agreement, and also whether the plaintiff had not known the contents of the power to Wikoff at the first, and also had not known before he started the second time, what were to be the contents of the power to be sent to him in Mexico. I am therefore of opinion that it was for the jury to .say, whether the power, considered with the other facts of the case, was evidence of anything more than of what was the original agreement. If they had found that it was not, then there would have been no basis for the plaintiff being entitled to recover for the value of his services, on the ground that the original contract had been modified. In that event, the plaintiff or the defendant, would have had the benefit of a decision as to whether or not the procuring of the decree from Maximilian was or was not a satisfaction of the plaintiff’s obligation to procure his consent to an assignment of the franchises, &e.
Upon the question, as to whether defendant was not entitled to go to the jury, as to the nature of what was to be done by the plaintiff by the original agreement, reference should be had to the testimony of plaintiff that defendant expressed Ms entire satisfaction with the decree that the plaintiff had obtained. This interview required a construction by the jury. It did not con- *291 statute such an acceptance by the defendant of what was done, that if the jury should find that the original agreement called for something else, they should also find that the plaintiff had performed the service. There was nothing to estop the defendant from showing what the fact really was. It was no waiver by defendant of any right. The contract had been fulfilled or it had not been fulfilled. It was not then executory. N othing that the defendant then said could have led the plaintiff to omit to do anything, which if done, might have given him a further right.
But it was evidence to go the jury as to the original contract, and as to whether the plaintiff had performed his part of it.
I am therefore of opinion that there should be a new-trial, the judgment being reversed with costs to appellant to abide the event.
Sanford, J., concurred.